UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                              Case No. 14-20797
                              Hon. Gerald E. Rosen

KEMEPAUDOR EKIYOR,

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION REQUESTING DISCLOSURE OF *BRADY* MATERIAL**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on       March 4, 2015      

PRESENT: Honorable Gerald E. Rosen
                      Chief Judge, United States District Court

## I. INTRODUCTION

Defendant Kemepaudor Ekiyor is charged in a December 16, 2014 indictment with one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii), and one count of importation of cocaine in violation of 21 U.S.C. §§ 952 and 960(b)(1)(B). These charges stem from allegations that as Defendant was traveling from Nigeria to his home in Ottawa, Canada with connections in Amsterdam and at the Detroit Metropolitan Airport, federal law enforcement agents at the Detroit airport discovered more than six kilograms of cocaine in a locked suitcase bearing a luggage tag with Defendant's name, with Defendant subsequently found to be

in possession of a key that opened this locked suitcase.

Through the present motion filed on February 11, 2015, Defendant seeks to compel the Government to disclose information purportedly in the possession of the United States Drug Enforcement Administration ("DEA") and other federal agencies relating to the smuggling of drugs by baggage handlers. In Defendant's view, the Government's disclosure of this information is required under the authority of *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194 (1963), *Giglio v. United States,* 405 U.S. 150, 92 S. Ct. 763 (1972), and their progeny, where this information either will help to exculpate Defendant or will assist in the impeachment of Government witnesses. The Government filed a response in opposition to this motion on February 25, 2015, observing that Defendant has been given the names and docket numbers of two recent cases in this District in which airport baggage handlers have been charged with drug smuggling activities, and arguing that any further disclosures sought in Defendant's motion would exceed the scope of the *Brady* materiality standard.

On March 2, 2015, the Court addressed this matter on the record during the opening day of Defendant's trial. For the reasons stated on the record at the March 2 hearing, as supplemented by the rulings below, the Court denies Defendant's motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

According to the criminal complaint and accompanying affidavit through which the Government commenced the present proceeding, federal agents of the Department of Homeland Security ("DHS") and Customs and Border Protection ("CBP") were

2

inspecting baggage that had arrived on a September 26, 2014 Delta Airlines flight from Amsterdam to Detroit Metropolitan Airport when they came across a locked travel bag with a Delta Airlines luggage tag affixed to it bearing the name of Defendant Kemepaudor Ekiyor. Upon cutting the lock to gain access to the bag, the agents found six bundles of a white powdery substance that field-tested positive for cocaine, with the combined weight of these bundles equaling approximately 6.9 kilograms.

The agents reviewed Defendant's travel records and determined that he was scheduled to depart later that same day on a flight from the Detroit airport to Ottawa, Canada. The agents proceeded to the departure gate and took Defendant and his possessions into custody. A search of a black laptop bag in Defendant's possession revealed three small keys that were found to match the lock on the travel bag containing the suspected cocaine. Upon advising Defendant of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966), and interviewing him, the agents were told that Defendant was traveling from Nigeria to his home in Ottawa via Amsterdam and Detroit, and that he had purchased the lock affixed to his travel bag while he was in Amsterdam.

In the wake of this incident, a grand jury handed down a December 16, 2014 indictment charging Defendant with one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii), and one count of importation of cocaine in violation of 21 U.S.C. §§ 952 and 960(b)(1)(B). Through his present motion, Defendant seeks an order compelling the Government to produce a wide range of materials and information in the possession of the DEA and other federal

agencies "relating to the smuggling of drugs by baggage handlers," (Defendant's Motion at 2), presumably in aid of a defense theory that the bundles of cocaine found in Defendant's travel bag were placed there by baggage handlers without Defendant's knowledge.[1]

### III.  ANALYSIS

The Supreme Court's familiar ruling in *Brady,* 373 U.S. at 87, 83 S. Ct. at 1196-97, imposes upon the Government the duty to disclose "evidence favorable to an accused" that is "material either to guilt or to punishment."  The Sixth Circuit has emphasized that the decisions in *Brady* and its progeny do not confer a right to discovery, but instead are meant to safeguard a defendant's due process right to a fair trial:

> As a general proposition, there is no general constitutional right to discovery in a criminal case, and *Brady* did not create one.  Rather, *Brady* is concerned only with cases in which the government possesses information which the defendant does not, and the government's failure to disclose the information deprives the defendant of a fair trial.  Reversal [for a *Brady* violation] is only required, therefore, where there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine the confidence in the outcome.

*United States v. Mullins,* 22 F.3d 1365, 1371 (6th Cir. 1994) (internal quotation marks, alterations, and citations omitted).

The threshold question implicated by Defendant's present motion is whether the

---

[1] In its response to Defendant's motion, the Government states that it has made a more limited disclosure to Defendant, providing the names and docket numbers of two recent cases in this District involving allegations that airport baggage handlers participated in drug trafficking activities.  The Government further states its belief that Defendant agreed to this more limited disclosure, (*see* Gov't Response Br. at 2 n.1), but the present motion indicates otherwise.

information he seeks is "material" within the meaning of *Brady* and its progeny. "[T]he issue of materiality for *Brady* purposes pertains only to the question of a defendant's guilt or innocence, not to the issue of a defendant's ability or inability to prepare for trial." *United States v. Phillip,* 948 F.2d 241, 249 (6th Cir. 1991). Moreover, information is not "material" under this standard unless it "consists of, or would lead directly to, evidence admissible at trial for either substantive or impeachment purposes." *Phillip,* 948 F.2d at 249. A court's determination that inadmissible evidence might lead to the discovery of evidence admissible at trial may not rest on "mere speculation." *Wood v. Bartholomew,* 516 U.S. 1, 6, 116 S. Ct. 7, 10 (1995); *see also Wogenstahl v. Mitchell,* 668 F.3d 307, 325 n.3 (6th Cir. 2012).

In his present motion, Defendant does not suggest how the information he seeks might be admissible at his forthcoming trial or, at a minimum, might lead to the discovery of admissible evidence. To the contrary, the Court harbors serious doubts that the avenue Defendant proposes to explore will result in evidence that he may offer at trial for either substantive or impeachment purposes. As noted earlier, Defendant's request broadly encompasses "all reports, documents, surveys, studies, etc. in the possession of the DEA or other federal agencies relating to the smuggling of drugs by baggage handlers." (Defendant's Motion at 2.) Defendant evidently seeks this information in support of a defense theory that the drugs found in his travel bag were placed there by baggage handlers without his knowledge, and he states that he "has been informed and believes that the government is aware of other cases in which the allegations by the defense in this

case are supported by the facts in other cases and internal materials in the possession of the government." (*Id.* at 3.) Defendant further states that he "is informed and believes that the DEA has a database of cases and other nonpublic information in which baggage handlers have . . . engaged in smuggling activities." (*Id.*)

Assuming that federal government agencies have information responsive to Defendant's request, Defendant is likely to encounter significant evidentiary obstacles to the admission at trial of any such materials the Government might provide. Defendant's request, if construed literally and without any limitation, would reach (i) all cases, without temporal limitation, brought by federal prosecutors anywhere in the country in which a baggage handler is allegedly involved to any extent in a charged drug trafficking offense, (ii) all documents — spanning from pleadings and exhibits filed on the public docket to internal investigative materials — possessed by the prosecution team in each such case, and (iii) all materials compiled by any federal agency, without temporal limitation, in any investigation into the possible involvement of baggage handlers in drug trafficking activities, regardless of whether these investigations resulted in the bringing of criminal charges, and regardless of whether these investigations have concluded or remain ongoing. Plainly, the breathtaking scope of this request would sweep in materials that could not possibly be viewed as relevant to any theory of innocence that Defendant might wish to pursue in this case. To take an obvious example, Defendant's request would encompass materials from an investigation in which the Government elected not to pursue any charges or a grand jury declined to return an indictment. Yet, the ***absence*** of charges

brought against a baggage handler who was the target of a federal government investigation into suspected drug trafficking activity surely cannot be viewed as evidence that would tend to negate the charges brought against Defendant here. *See United States v. Agurs,* 427 U.S. 97, 109 n.16, 96 S. Ct. 2392, 2400 n.16 (1976) (expressing doubt that the government "has an obligation to communicate preliminary, challenged, or speculative information" (internal quotation marks and citation omitted)); *United States v. Taylor,* No. 07-3975, 471 F. App'x 499, 520 (6th Cir. June 21, 2012) (noting the government's "compelling" argument in that case that "unsubstantiated allegations are not material under *Brady"*).

Even in cases where criminal charges have been brought against baggage handlers for their alleged involvement in drug trafficking activities — *e.g.,* the two cases from this District identified in the Government's limited response to Defendant's discovery request — Defendant has failed to suggest how information pertaining to these cases, if produced by the Government, could be admitted into evidence at Defendant's forthcoming trial. Evidence of the drug trafficking activities of a baggage handler in another case, if offered by Defendant here to suggest that a baggage handler likewise might have been responsible for the drugs found in his travel bag, would run afoul of the prohibition under Federal Rule of Evidence 404(b)(1) against the admission of "[e]vidence of a crime, wrong, or other act" to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." As the Sixth Circuit has explained, Rule 404(b) safeguards against the introduction of so-called "other acts"

evidence that is offered "merely to show propensity." *United States v. Clay,* 667 F.3d 689, 693 (6th Cir. 2012).

More specifically, the information that Defendant seeks from the Government here, concerning the activities of baggage handlers in other cases, has been termed by the courts as "reverse 404(b)" evidence — that is, "evidence of a prior act by another [that] is offered as exculpatory evidence by the defendant, instead of being used by a prosecutor against a defendant." *United States v. Lucas,* 357 F.3d 599, 605 (6th Cir. 2004). Other circuits have adopted a more lenient standard for determining whether a defendant should be permitted to introduce reverse 404(b) evidence, noting that "the principal policy consideration underlying Rule 404(b)'s exclusionary rule is to protect the parties in an action, and in particular, criminal defendants, from the danger of unfair prejudice," and reasoning that this danger "does not exist" where "the *defendant* offers evidence of other crimes or bad acts of a third party exculpatorily." *See Lucas,* 357 F.3d at 612-14 (Rosen, D.J., concurring) (surveying the standards applied by other circuits in determining the admissibility of reverse 404(b) evidence, and advocating that the more lenient standard should be adopted in this Circuit). The Sixth Circuit, however, has held that "the standard analysis of Rule 404(b) evidence should generally apply," regardless of whether the Government seeks to introduce other acts evidence against a defendant or a defendant wishes to offer such evidence "with respect to an absent third party, not charged with any crime." *Lucas,* 357 F.3d at 606. Under the rule adopted by the Sixth Circuit, therefore, reverse 404(b) evidence of other acts by a third party is inadmissible if it is offered only

to support a propensity inference — that is, to suggest that it is more likely that the third party conducted himself on another occasion in accordance with the character evidenced by the other act.

The Court fails to see how the information sought by Defendant could have any probative value at his trial apart from its use to support an impermissible propensity inference — namely, to suggest that because baggage handlers in other cases were accused or convicted of drug trafficking activities, it is more likely that a baggage handler is responsible in this case for the drug smuggling activity that the Government seeks to attribute to Defendant. Indeed, such a propensity inference would be particularly attenuated and inappropriate in this case, because absent evidence that the *same* baggage handler charged in another case also might have been in a position to plant drugs in Defendant's luggage without his knowledge, the materials sought by Defendant from other cases would tend to show only the propensity of an entire *class* of employees in the travel industry (baggage handlers) to engage in drug trafficking activities. If there is a theory of admissibility for such evidence, the Court is not aware of it, and Defendant certainly has not identified one. Thus, although this Court continues to believe that the broader use of reverse Rule 404(b) evidence approved in other circuits better reflects the policies underlying Rule 404(b), the baggage handler material sought in Defendant's present motion would not be admissible even under this more generous standard.

Even assuming that Defendant could satisfy the Rule 404(b) criteria for admitting evidence of the crimes, wrongs, or other acts of baggage handlers, exclusion would

nonetheless be called for under Fed. R. Evid. 403 if the probative value of this evidence would be "substantially outweigh[ed]" by the "risk of unfair prejudice, confusion of the issues, misleading the jury, or undue delay." *United States v. Qin,* 688 F.3d 257, 263-64 (6th Cir. 2012).  In this case, Defendant's introduction of evidence of drug trafficking by baggage handlers would spawn a mini-trial to explore such matters as when and where these activities occurred, the precise nature of the activities, and whether these activities had any conceivable bearing on or relation to the events giving rise to the charges here, just so that the jury could meaningfully determine what weight, if any, to give to this evidence in assessing Defendant's guilt or innocence of the charged offenses.  Given that the probative value of this baggage handler evidence would surely be modest, at best, and would rest on a number of tenuous inferences, the Court has no difficulty in concluding that this dubious probative value would be substantially outweighed by the risk of confusing the pertinent issues, misleading the jury, and unduly delaying the proceedings.

In addition to the obstacles posed by Rules 403 and 404(b) to the admissibility of any evidence Defendant might obtain as a result of the disclosure sought in his motion, this requested disclosure also runs afoul of another aspect of the *Brady* materiality standard.  As noted earlier, information is not "material" under *Brady* unless it "consists of, or would ***lead directly to,*** evidence admissible at trial for either substantive or impeachment purposes," *Phillip,* 948 F.2d at 249 (emphasis added), and this link between a *Brady* disclosure and evidence admissible for a proper purpose "cannot be based on speculation," *Wogenstahl,* 668 F.3d at 325 n.3 (internal quotation marks and citation

10

omitted). The Government's duty of disclosure does not extend to information that is directly "relevant to neither guilt nor credibility," but rather might merely be claimed to be "of use to the defendant in acquiring exculpatory or impeachment evidence that the defendant had thought was unavailable." *Mullins,* 22 F.3d at 1372. As the Tenth Circuit has observed:

> The Government has no obligation to disclose possible theories of the defense to a defendant. If a statement does not contain any expressly exculpatory material, the Government need not produce that statement to the defense. To hold otherwise would impose an insuperable burden on the Government to determine what facially non-exculpatory evidence might possibly be favorable to the accused by inferential reasoning. We are confident that the Supreme Court did not intend the *Brady* holding to sweep so broadly.

*United States v. Comosona,* 848 F.2d 1110, 1115 (10th Cir. 1988); *see also Harris v. Kuba,* 486 F.3d 1010, 1016 (7th Cir. 2007) (*"Brady* does not require that police officers or prosecutors explore multiple potential inferences to discern whether evidence that is not favorable to a defendant could become favorable."); *United States v. Marrero,* 904 F.2d 251, 261 (5th Cir. 1990) (holding that *Brady* "does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case").

The Court finds that just such inferential reasoning would be necessary to forge a link between the information sought by Defendant and admissible exculpatory evidence. Assuming, for the moment, that the requested disclosure would reveal instances of baggage handlers engaging in drug trafficking activity — and assuming that Defendant

11

could overcome the evidentiary hurdle discussed earlier — this by itself, of course, would not tend to show that Defendant is innocent of the charges brought against him in this case. Rather, depending on a number of factors bearing upon the probative value of the Government's disclosure — *e.g.,* the airports at which baggage handlers engaged in drug trafficking, the precise nature of these activities, and the dates on which these activities occurred — various inferential leaps would be necessary to cull admissible exculpatory evidence from the materials sought by Defendant. The foregoing authorities make it clear that the Government has no such obligation to produce information that, at best and through inferential reasoning, would merely assist in the pursuit of a defense theory that baggage handlers were responsible for the drugs giving rise to the charges in this case.

Consequently, because Defendant has failed to explain how the information he seeks "consists of, or would lead directly to, evidence admissible at trial for either substantive or impeachment purposes," *Phillip,* 948 F.2d at 249, he cannot satisfy the standard of materiality established in *Brady* and its progeny. To the extent that Defendant wishes to offer evidence for the more modest purpose of establishing that the federal government has charged baggage handlers in other cases with engaging in drug trafficking activities, the Government has already provided him with sufficient information — *i.e.,* names and docket number of other cases in this District featuring such charges — to enable him to make this showing, and any additional information sought by Defendant would be merely cumulative on this point. It follows that Defendant's appeal to *Brady* is unavailing as a basis for the production of the wide range of materials

identified in his motion.

Finally, even if Defendant could satisfy the *Brady* standard for materiality, he must also show that the information he seeks is "within the control of the Government," because the duty imposed on the prosecution under *Brady* and its progeny extends only to "material evidence . . . over which the prosecution team has control." *United States v. Graham,* 484 F.3d 413, 417 (6th Cir. 2007). As the Supreme Court has explained, an "individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf *in the case,* including the police." *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S. Ct. 1555, 1567 (1995) (emphasis added); *see also Jamison v. Collins,* 291 F.3d 380, 385 (6th Cir. 2002) (finding that the duty of disclosure under *Brady* "extends to information in the possession of the law enforcement agency ***investigating the offense***" (emphasis added)). Thus, the scope of a prosecutor's active or constructive "possession" of information subject to the disclosure mandate of *Brady* is limited to the context of the particular case in which disclosure is sought:

> An individual prosecutor is presumed . . . to have knowledge of all information gathered in connection with his office's investigation of the case . . . . Nonetheless, knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis.

*United States v. Avellino,* 136 F.3d 249, 255 (2d Cir. 1998); *see also United States v. Morris,* 80 F.3d 1151, 1169 (7th Cir. 1996) (reasoning that "neither *Kyles* nor [a prior

Seventh Circuit ruling] can be read as imposing a duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue"); *United States v. Meregildo,* 920 F. Supp.2d 434, 440 (S.D.N.Y. 2013) (explaining that "[t]he constructive knowledge of the prosecutor is not limitless," and "does not encompass every agency and individual within the federal government").

Defendant's request here surely exceeds any such notion of information known to the federal prosecution team and investigators involved in this particular case. Most notably, he states his belief that the DEA maintains a "database of cases and other nonpublic information in which baggage handlers have . . . engaged in smuggling activities." (Defendant's Motion at 3.) Nothing suggests, however, that the prosecution team in this case has had any occasion to consult this purported database or learn of its contents. Even more far afield is Defendant's reference in his motion to newspaper articles and other materials suggesting that baggage handlers in Amsterdam might be involved in drug smuggling activities. Even under the broadest possible notion of a monolithic federal government that is charged with constructive knowledge of any and all information known to any of its myriad agencies, the Government surely cannot be said to possess or have control over information uncovered in law enforcement investigations by foreign governments or agencies. Accordingly, the Court rejects Defendant's request on the additional ground that he has failed to show that the information he seeks is "within the control of the Government," *Graham,* 484 F.3d at 417, as this requirement has been

14

construed in cases applying the *Brady* standard for disclosure.

## IV.  CONCLUSION

For the reasons stated in open court on March 2, 2015, as supplemented by the rulings set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's February 11, 2015 motion requesting production of *Brady* material (docket #26) is DENIED.

                s/Gerald E. Rosen
                Chief Judge, United States District Court

Dated:  March 4, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 4, 2015, by electronic and/or ordinary mail.

                s/Julie Owens
                Case Manager, (313) 234-5135