**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

                              Case No. 14-20797

v.                              Hon. Gerald E. Rosen

KEMEPAUDOR EKIYOR,

        Defendant.

_____/

**OPINION AND ORDER SUSTAINING DEFENDANT'S**
**OBJECTIONS TO GOVERNMENT'S PROPOSED EXHIBIT 26**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____ March 12, 2015 _____

PRESENT:  Honorable Gerald E. Rosen
                  Chief Judge, United States District Court

## I.  INTRODUCTION

Defendant Kemepaudor Ekiyor is charged in a December 16, 2014 indictment

with one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§

841(a)(1) and 841(b)(1)(A)(ii), and one count of importation of cocaine in violation of 21

U.S.C. §§ 952 and 960(b)(1)(B).  These charges stem from allegations that as Defendant

was traveling in September of 2014 from Nigeria to his home in Ottawa, Canada, with

connections in Amsterdam and at the Detroit Metropolitan Airport, federal law

enforcement agents at the Detroit airport discovered more than six kilograms of cocaine

in a locked suitcase that Defendant allegedly checked at the gate before boarding his

September 26, 2014 flight from Amsterdam to Detroit.

As part of its proofs at trial, the Government has proposed to introduce a set of documents that it has designated as Exhibit 26.  The last page of this proposed exhibit is a log of baggage transactions, which purports to list the tag number and weight of each piece of luggage that Defendant checked for the Nigeria-to-Amsterdam and Amsterdam-to-Detroit legs of his trip.[1]  Of particular note, this log discloses that a bag with tag number 8074318894 was checked at the gate prior to the departure of Delta Airlines Flight 251 from Amsterdam to Detroit, and the Government maintains that this is the bag that was found to contain cocaine upon Defendant's arrival in Detroit.

Prior to the commencement of his trial on March 2, 2015, Defendant objected to the admission of the Government's proposed Exhibit 26, primarily on the ground that portions of this exhibit — most notably, the baggage log — are "testimonial" in nature under a series of Supreme Court decisions beginning with *Crawford v. Washington,* 541 U.S. 36, 124 S. Ct. 1354 (2004), and thus are subject to exclusion under the Sixth Amendment's Confrontation Clause absent Defendant's opportunity to cross-examine those who made the testimonial statements captured in this exhibit.  The Court addressed Defendant's objections in open court on March 3, 2015, prior to the commencement of the second day of Defendant's trial.  For the reasons stated on the record at the March 3 hearing, as supplemented by the rulings below, the Court sustains Defendant's objections

---

[1]This baggage log is written in Dutch, but the Government has provided an English translation of the log.  For present purposes, the Court assumes that this translation is accurate.

2

and holds that the Government's proposed Exhibit 26 may not be introduced at trial.[2]

## II. ANALYSIS

### A.   The Supreme Court Decisions Addressing the Admissibility of Business Records Under the Confrontation Clause

In seeking to introduce its Exhibit 26 at Defendant's trial, the Government relies on the hearsay exception for business records set forth in Fed. R. Evid. 803(6), arguing that the baggage log contained within this exhibit qualifies as a record made and kept in the course of the regularly conducted activity of the business entity that generated the log, KLM Royal Dutch Airlines.[3]   Until fairly recently, if an exhibit satisfied the Rule 803(6)

---

[2]Following the Court's ruling at the March 3 hearing, the Government indicated that it might seek to obtain a more comprehensive set of baggage records that would address some or all of the evidentiary and Confrontation Clause concerns articulated in this ruling.  As noted later in this opinion, the Government ultimately did obtain additional records and the Court determined that they were admissible.  The present opinion is strictly limited to the materials submitted in the Government's proposed Exhibit 26, and does not address the separate and discrete issues of admissibility implicated by the Government's subsequent submission of additional baggage records later in Defendant's trial.

[3]It should be noted that a federal statute, 18 U.S.C. § 3505, separately governs the admissibility of foreign records of regularly conducted activity.  *See United States v. Sturman,* 951 F.2d 1466, (6th Cir. 1991) (explaining that "[s]ection 3505 allows the admission of foreign records, and prevents their exclusion as hearsay, provided that a foreign certification attests to certain facts").  This statute provides:

> In a criminal proceeding in a court of the United States, a foreign record of regularly conducted activity, or a copy of such record, shall not be excluded as evidence by the hearsay rule if a foreign certification attests that —
>
> (A) such record was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;
>
> (B) such record was kept in the course of a regularly conducted business activity;

standards for treatment as a business record, it would routinely be admissible over a Confrontation Clause challenge because Rule 803(6) was deemed a "firmly-rooted" hearsay exception that sufficiently ensured the exhibit's reliability. *See United States v. Waters,* 158 F.3d 933, 940-41 (6th Cir. 1998); *see generally Ohio v. Roberts,* 448 U.S. 56, 66, 100 S. Ct. 2531, 2539 (1980) (holding that a hearsay statement of an unavailable witness is admissible under the Confrontation Clause if it "bears adequate indicia of reliability," and that the requisite reliability "can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception" (internal quotation marks omitted)).

In *Crawford v. Washington,* 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004), however, the Supreme Court overruled the reliability standard articulated in *Ohio v. Roberts,* and instead held that the admissibility of an out-of-court statement under the Confrontation Clause turns upon whether the statement is "testimonial." In particular, the Court emphasized that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually

---

(C) the business activity made such a record as a regular practice; and

(D) if such record is not the original, such record is a duplicate of the original;

unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

18 U.S.C. § 3505(a)(1). Because the criteria for admissibility under this statute are precisely the same as those set forth in Rule 803(6), the Court will refer to this Rule and the cases applying it in the remainder of this opinion.

prescribes:  confrontation."  *Crawford,* 541 U.S. at 68-69, 124 S. Ct. at 1374.  Although

the Court declined to "spell out a comprehensive definition of 'testimonial,'" and

although *Crawford* itself provided no occasion for the Court to consider whether business

records might fall within or outside this definition,[4] the Court noted as an aside that

business records "by their nature" ordinarily would be characterized as "not testimonial."

541 U.S. at 56, 68, 124 S. Ct. at 1367, 1374 (footnote omitted).

In two of its post-*Crawford* decisions, the Supreme Court has more directly

addressed the circumstances under which business records are testimonial, and thus

trigger the constitutional guarantee of confrontation.  First, in *Melendez-Diaz v.*

*Massachusetts,* 557 U.S. 305, 308-09, 129 S. Ct. 2527, 2531 (2009), a state prosecutor

sought to introduce three sworn "certificates of analysis" reporting the results of forensic

tests showing that a substance seized by the police during the petitioner's arrest was

cocaine, and the Massachusetts courts allowed the admission of these certificates without

requiring the laboratory analysts who performed the forensic tests to testify in person at

the petitioner's trial.  The Supreme Court reversed, reasoning that the certificates made

the factual assertion "that the substance found in the possession of [the petitioner] and his

codefendants was, as the prosecutor claimed, cocaine," and concluding that the

certificates therefore were testimonial because they were "functionally identical to live,

in-court testimony" by the laboratory analysts stating the results of their forensic tests.

---

[4]The hearsay statements at issue in *Crawford* were made by a witness while in police
custody and under questioning by police detectives.

*Melendez-Diaz,* 557 U.S. at 310-11, 129 S. Ct. at 2532.

In so ruling, the Court addressed (and rejected) the argument of the respondent Commonwealth of Massachusetts that the certificates executed by the lab analysts should be "admissible without confrontation because they are akin to the types of official and business records admissible at common law." 557 U.S. at 321, 129 S. Ct. at 2538. The Court first disagreed that the certificates "qualify as traditional official or business records," but then emphasized that "even if they did, their authors would be subject to confrontation nonetheless." 557 U.S. at 321, 129 S. Ct. at 2538. The Court explained:

> Respondent . . . misunderstands the relationship between the business-and-official-records hearsay exceptions and the Confrontation Clause. As we stated in *Crawford:* "Most of the hearsay exceptions covered statements that by their nature were not testimonial — for example, business records or statements in furtherance of a conspiracy." 541 U.S., at 56, 124 S.Ct. 1354. Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because — having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial — they are not testimonial. Whether or not they qualify as business or official records, the analysts' statements here — prepared specifically for use at petitioner's trial — were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment.

557 U.S. at 324, 129 S. Ct. at 2539-40.

Similarly, in its more recent decision in *Bullcoming v. New Mexico,* 564 U.S. __, 131 S. Ct. 2705, 2709-10 (2011), the Supreme Court again addressed the admissibility of a forensic laboratory analysis — this time reporting the results of a blood-alcohol test performed on a blood sample drawn from the petitioner after a vehicle he was driving rear-ended a pickup truck. As in *Melendez-Diaz,* the prosecutor introduced the lab report

6

into evidence at the petitioner's trial, but in this case the prosecution also offered the testimony of "another analyst who was familiar with the laboratory's testing procedures, but had neither participated in nor observed the test on [the petitioner's] blood sample." *Bullcoming,* 131 S. Ct. at 2709-10.  Consistent with the ruling in *Melendez-Diaz,* the New Mexico Supreme Court recognized that the blood-alcohol analysis was testimonial and therefore triggered the right of confrontation, but the state court nonetheless concluded that the live testimony of another analyst who had not performed the test on the petitioner's blood sample was sufficient to meet the dictates of the Confrontation Clause. *See Bullcoming,* 131 S. Ct. at 2710.

The Supreme Court reversed, holding that the "surrogate testimony" of another analyst did not provide the right of confrontation guaranteed under the Sixth Amendment. 131 S. Ct. at 2710.  Although the New Mexico court reasoned that the testimony of another analyst was sufficient because the analyst who had actually performed the blood-alcohol test, Curtis Caylor, had "simply transcribed the result generated by the gas chromatograph machine, presenting no interpretation and exercising no independent judgment," 131 S. Ct. at 2714 (internal quotation marks, alteration, and citation omitted), the Supreme Court disagreed with this characterization of the lab report:

> Caylor certified that he received [petitioner] Bullcoming's blood sample intact with the seal unbroken, that he checked to make sure that the forensic report number and the sample number corresponded, and that he performed on Bullcoming's sample a particular test, adhering to a precise protocol.  He further represented, by leaving the "remarks" section of the report blank, that no "circumstance or condition affected the integrity of the sample or the validity of the analysis."  These representations, relating to

7

> past events and human actions not revealed in raw, machine-produced data,
> are meet for cross-examination.

131 S. Ct. at 2714 (internal quotation marks, alterations, and citations omitted).  Neither

did the Court accept the assertion of the respondent State of New Mexico that Caylor's

statements in his report should be treated as nontestimonial because "they were simply

observations of an independent scientist made according to a non-adversarial public

duty."  131 S. Ct. at 2716-17 (internal quotation marks and citation omitted).  Rather, the

Court reiterated its ruling in *Melendez-Diaz* that "[a] document created solely for an

evidentiary purpose, . . . made in aid of a police investigation, ranks as testimonial."  131

S. Ct. at 2717 (internal quotation marks and citation omitted).

Finally, while the Supreme Court has returned more recently to the question of the

admissibility of a lab report over a Confrontation Clause challenge, this latest decision

cannot be said to provide further clarity on this issue.  In *Williams v. Illinois,* 132 S. Ct.

2221, 2227-28 (2012), a closely-divided Court held that an expert witness called by the

prosecution at the petitioner's criminal trial on rape charges was properly allowed to

testify, over a Confrontation Clause challenge, that "a DNA profile produced by an

outside laboratory, Cellmark, matched a profile produced by the state police lab using a

sample of petitioner's blood."  A four-Justice plurality held that the expert's testimony

was admissible on two grounds.  First, the plurality reasoned that the expert's references

to statements in the Cellmark DNA report were "not offered for their truth," but rather

"solely for the purpose of explaining the assumptions on which" the expert had based her

8

opinions. *Williams,* 132 S. Ct. at 2228 (Alito, J., plurality opinion). Next, the plurality

explained that even if the Cellmark report had been admitted into evidence, it could not

be deemed testimonial, where (i) Cellmark's DNA analysis "was sought not for the

purpose of obtaining evidence to be used against petitioner, who was not even under

suspicion at the time, but for the purpose of finding a rapist who was on the loose," and

(ii) the report was "not inherently inculpatory," but "[o]n the contrary" was "evidence that

tends to exculpate all but one of the more than 7 billion people in the world today." 132

S. Ct. at 2228 (Alito, J.). Justice Thomas concurred in the plurality's conclusion that the

testimony of the prosecutor's expert did not run afoul of the Confrontation Clause

through its references to out-of-court statements in the Cellmark report, but he did so on

the separate ground that "Cellmark's statements lacked the requisite formality and

solemnity to be considered 'testimonial' for purposes of the Confrontation Clause." 132

S. Ct. at 2255 (Thomas, J., concurring in the judgment).

Consequently, while a majority of Supreme Court Justices agreed that the

Cellmark lab report was admissible over a Confrontation Clause challenge, there was no

such agreement or common ground on a legal basis for this ruling. *See United States v.*

*Duron-Caldera,* 737 F.3d 988, 994-95 n.4 (5th Cir. 2013) (observing that there is no

"common denominator between the plurality opinion and Justice Thomas's concurring

opinion" in *Williams,* such that it would be possible to derive a "holding" in the case from

the "narrowest grounds" shared by the Justices who concurred in the judgment (internal

quotation marks and citation omitted)). To the contrary, while the plurality found that the

prosecution expert did not refer to the Cellmark report "for the purpose of proving the truth of" any matter asserted in the report, *Williams,* 132 S. Ct. at 2236 (Alito, J.), Justice Thomas opined that "there was no plausible reason for the introduction of Cellmark's statements other than to establish their truth," 132 S. Ct. at 2256 (Thomas, J., concurring in the judgment).  Likewise, the plurality concluded that the Cellmark report was not testimonial because it "was not prepared for the primary purpose of accusing a targeted individual," 132 S. Ct. at 2243 (Alito, J.), but Justice Thomas strenuously objected to the plurality's "primary purpose" test for determining whether an out-of-court statement is testimonial, stating that it "lacks any grounding in constitutional text, in history, or in logic," 132 S. Ct. at 2262 (Thomas, J., concurring in the judgment).[5]

In sum, *Williams* sheds little (if any) light on this Court's inquiry whether the purported business records offered by the Government in this case are properly characterized as "testimonial" within the meaning of *Crawford* and its progeny.  A majority of Justices in *Williams* concluded that the Cellmark report was not testimonial, but this majority failed to "settle on a reason why."  *Williams,* 132 S. Ct. at 2265 (Kagan, J., dissenting).  Indeed, the dissenters observed that "[f]ive Justices specifically reject every aspect of [the plurality's] reasoning and every paragraph of its explication."  132 S.

_____

[5]The four dissenting Justices in *Williams* expressly agreed with Justice Thomas on this point, opining that the "primary purpose" test articulated in the Supreme Court's past Confrontation Clause decisions inquired only whether a statement was made "for the primary purpose of establishing past events potentially relevant to later criminal prosecution," and did not require "in addition" that "the statement must be meant to accuse a previously identified individual."  132 S. Ct. at 2273-74 (Kagan, J., dissenting) (internal quotation marks and citations omitted).

10

Ct. at 2265 (Kagan, J., dissenting).  As will become evident below, however, the Court need not devote any further efforts to cracking the code of *Williams,* because the Government's proposed Exhibit 26 runs afoul of more basic and well-settled evidentiary principles established under Rule 803(6), and also is readily characterized as testimonial under any reasonable reading of the relevant Supreme Court and Sixth Circuit precedents handed down in the wake of *Crawford.*

**B.**   **The Government Has Failed to Supply a Proper Foundation for Treating Its Proposed Exhibit 26 as a Business Record Under Rule 803(6).**

As observed earlier, the Government contends that its proposed Exhibit 26 — and, in particular, the log of baggage transactions that is found at the fourth and final page of this exhibit — is eligible for admission at Defendant's trial as a business record under Rule 803(6).  In support of this theory of admissibility, the Government has produced a "Certificate of Authenticity of Business Records" executed by Robert Putters, a security manager for KLM Royal Dutch Airlines, stating that the baggage transaction log in question is a copy of a record that was (i) "made at or near the time of the occurrence of the matters set forth therein, by (or from information transmitted by) a person with knowledge of those matters," (ii) "kept in the course of regularly conducted business activity," and (iii) "made by the said business activity as a regular practice."  (*See* Gov't Proposed Ex. 26 at 2, Certificate of Authenticity.)  These statements, of course, precisely track the requirements set forth at subsections (A) through (C) of Rule 803(6) for the

11

admission of a business record.[6]

As matters now stand, however, the Government has not provided a sufficient foundation for concluding that the baggage log qualifies as a business record under Rule 803(6). While the "Certificate of Authenticity" executed by Mr. Putters states that the baggage log is a true copy of a record that was created "at or near the time" of Defendant's September 2014 flights and kept "in the course of [KLM's] regularly conducted business activity," it is evident from the face of the log that it was prepared at the request of the Government for the specific purpose of introducing it at Defendant's criminal trial. This log, after all, lists only the baggage associated with Defendant as he traveled from Lagos, Nigeria to Amsterdam and then from Amsterdam to Detroit, and it is highly doubtful that KLM separately creates and maintains a discrete log of the baggage checked by each individual passenger in the course of his or her trip from its initial point of departure to its final destination. Rather, it is far more likely that the information in the baggage log was culled from an underlying database that includes an entry for each bag checked by each passenger on each flight operated by KLM. Indeed, it is especially clear that the baggage log was created specifically for use in the

---

[6]Mr. Putters further states in this certificate that he is "subject to criminal penalty under the laws of the Netherlands for an intentionally false declaration." (*Id.*) This statement, along with the others in the certificate that address the requirements of Rule 803(6)(A)-(C), is directed at establishing that the Government's proposed exhibit qualifies as self-authenticating evidence under Fed. R. Evid. 902(12). Absent satisfaction of Rule 803(6)(A)-(C), an exhibit cannot be deemed self-authenticating under Rule 902(11) or 902(12) as a certified domestic or foreign record of regularly conducted activity.

prosecution of Defendant, as it (i) begins with a statement indicating that it represents a "[l]uggage transactions/message log for" Defendant in particular, and (ii) concludes with the statement that "according to the Bag[] manager, there [we]re 4 (four) suitcases with a total weight of 79 kg (174.16 lbs) loaded on" the September 26, 2014 Delta Flight 251 that were associated with the passenger in seat 41E (*i.e.,* Defendant).  (Gov't Proposed Ex. 26 at 4.)[7]  These summarizing statements directed specifically at Defendant surely establish that the baggage log was prepared for use in this case, and this presumptively renders the baggage log ineligible for admission as a business record under Rule 803(6). *See Jordan v. Binns,* 712 F.3d 1123, 1135 (7th Cir. 2013) ("It is well established . . . that documents prepared in anticipation of litigation are not admissible under FRE 803(6).").

To be sure, if the Government's proposed exhibit could accurately be characterized as a computer printout that merely reproduces a selected subset of data from underlying, electronically stored business records, the case law indicates that such a printout could qualify as a business record, even though it was created expressly for use in the prosecution of Defendant.  In *United States v. Nixon,* 694 F.3d 623, 634-35 (6th Cir. 2012), the Sixth Circuit held that a spreadsheet disclosing the defendant's records from her "ProPay" account (a PayPal-like service) qualified as a non-hearsay business record under Rule 803(6), despite the fact that this spreadsheet was created specifically for use at the defendant's trial in response to a government subpoena.  In so ruling, the

---

[7]As noted earlier, the baggage log is written in Dutch, and the above-quoted excerpts are from an English translation provided by the Government.

court observed that all of the information in the spreadsheet was obtained from an underlying electronic database that ProPay "created and kept in the regular course and practice of [its] business operations," and it reasoned that the mere reproduction of this electronic data in a "structured and comprehensible form" did not alter the business-record nature of the underlying data. *Nixon,* 694 F.3d at 634-35;[8] *see also United States v. Fujii,* 301 F.3d 535, 539 (7th Cir. 2002) ("Computer data compiled and presented in computer printouts prepared specifically for trial is admissible under Rule 803(6), even though the *printouts* themselves are not kept in the ordinary course of business.").

Yet, while the reasoning in *Nixon* provides a potential path to admissibility for the baggage log here, the Government has not promised to offer any testimony that would establish the factual predicate of the ruling in that case — namely, that the information in the baggage log consists solely of a subset of a larger underlying database that KLM keeps in the course of its regularly conducted activities. The boilerplate "Certificate of Authenticity" executed by Mr. Putters of KLM does not satisfy this prerequisite, as it does nothing more than simply parrot the language of Rule 803(6), without offering any details as to the sorts of baggage-related records maintained by KLM or the manner in which these records are generated and stored. Moreover, the Court has already noted the questionable basis for Mr. Putters's assertions in this certificate, where at least some of the statements in the baggage log appear to reflect conclusions reached about underlying

---

[8]The court in *Nixon* addressed only a hearsay objection to the admission of the spreadsheet, and did not consider any possible Confrontation Clause challenge to this evidence.

14

baggage data, rather than mere replication of the underlying data itself.  Absent testimony or other evidence showing (i) that the baggage log is the product of an underlying database that satisfies the criteria of Rule 803(6) as a compilation of baggage-related records kept in the course of KLM's ordinary business activity, and (ii) that this log consists solely of data from this underlying source, and does not include information derived from extrinsic sources or analysis, the Government cannot appeal to *Nixon* as authority for admitting the baggage log included within its proposed Exhibit 26.

## C.   The Government's Proposed Exhibit 26 Includes Testimonial Statements That Cannot Be Admitted Absent Defendant's Opportunity to Confront the Witnesses Who Made These Statements.

Apart from the Government's failure to furnish an evidentiary basis for concluding that its proposed Exhibit 26 qualifies as a business record under Rule 803(6),[9] Defendant also contends that the baggage log included within this exhibit includes statements that should be deemed "testimonial" under *Crawford* and its progeny, such that the statements cannot be admitted at Defendant's trial absent an opportunity for cross-examination that the Government does not promise to provide.  For reasons similar to those identified in the Court's Rule 803(6) analysis, the Court agrees with Defendant that the Government's proposed Exhibit 26 is subject to exclusion under the Confrontation Clause.

If the Government were able to show that its proposed exhibit qualifies as a business record under Rule 803(6), this would go a long way toward overcoming

---

[9]As noted earlier, this same evidentiary deficiency necessarily forecloses the conclusion that the Government's proposed exhibit is self-authenticating under Rule 902(12).

Defendant's Confrontation Clause challenge.  As noted earlier, the Supreme Court

explained in *Melendez-Diaz,* 557 U.S. at __, 129 S. Ct. at 2539-40, that business records

ordinarily are "not testimonial" because they are "created for the administration of an

entity's affairs and not for the purpose of establishing or proving some fact at trial."  On

the other hand, the Supreme Court has emphasized that evidence "prepared specifically

for use at . . . trial" generally is deemed testimonial under the Confrontation Clause.

*Melendez-Diaz,* 557 U.S. at __, 129 S. Ct. at 2540.  In light of the Court's conclusion

above that the baggage log in proposed Exhibit 26 does not qualify as a business record,

in part because it was prepared specifically for use in Defendant's trial, the Government

faces an uphill battle in demonstrating that the baggage log is not testimonial in nature.

In *United States v. Maga,* No. 10-4008, 475 F. App'x 538 (6th Cir. Apr. 4, 2012),

the Sixth Circuit addressed circumstances similar to those presented here.  In that case,

the prosecution introduced forms prepared by an IRS employee, John DePowell, showing

that the defendant had not filed federal income tax returns between 2002 and 2006.  The

government argued that these forms were "merely synopses of tax records translated into

plain English," but the court disagreed and held that they were "'testimonial' statements

triggering confrontation rights," where DePowell had generated the forms "under

circumstances where one could reasonably believe that the government would use them

at trial," and where these forms were not "exact copies of the data the IRS ordinarily

maintains in its master files."  *Maga,* 475 F. App'x at 542.  In support of this ruling, the

16

court pointed to the Supreme Court's recognition that evidence becomes testimonial in

nature when it goes beyond a mere restatement of "raw, machine-produced data" and

includes "representations not revealed in the raw data." *Maga,* 475 F. App'x at 542

(citing *Bullcoming,* 131 S. Ct. at 2714). The court therefore rejected the prosecution's

argument that the forms generated by DePowell should be treated as "functionally

equivalent to a copy" of underlying data regularly kept by the IRS in the course of its

ordinary activities, and instead explained that once DePowell had "assesse[d] the

substantive similarity of the content, as opposed to authenticating the exactness of the

copy, he [had] crosse[d] the testimonial line" by "certifying to the record's substance or

effect." *Maga,* 475 F. App'x at 542 (internal quotation marks, alterations, and citation

omitted);[10] *see also United States v. Cameron,* 699 F.3d 621, 647 (1st Cir. 2012) (holding

that the reports in that case were testimonial because they did not simply consist of

"underlying records arranged and formatted in a readable way for presentation purposes,"

but instead "convey[ed] an *analysis* that was performed using pre-existing data").

The baggage log offered by the Government here triggers precisely the concern

addressed in *Maga,* and thus is properly characterized as testimonial. Although, as

discussed, the Government has not offered any testimony or other evidence shedding

light on the underlying database of baggage-related data maintained by KLM in the

---

[10]The Court in *Maga* nonetheless rejected the defendant's Confrontation Clause challenge
to the admission of the IRS forms, noting that DePowell was called as a witness at trial, and
finding that the defendant had an adequate opportunity to cross-examine DePowell concerning
his creation of the forms. *See Maga,* 475 F. App'x at 542-43.

course of its regular operations, the baggage log seemingly goes beyond a mere copy of this data and makes the affirmative representations (i) that certain bags were linked to Defendant during his travels from Nigeria to Amsterdam and then to Detroit, and (ii) that one bag attributed to Defendant, in particular — the bag later found to contain six bundles of suspected cocaine — was checked as "hand luggage at the gate" before Delta Flight 251 departed from Amsterdam to Detroit.  (Gov't Proposed Ex. 26 at 4.)  Indeed, the baggage log concludes with the statement that "according to the Bag[] manager," there were four suitcases loaded onto Flight 251 that were attributable to Defendant.  (*Id.*)  To the extent that the baggage log is offered to forge a link between Defendant and certain bags checked on the flights he took between Nigeria and Detroit, the Government must show that the information in the log that supports this finding is derived solely from "raw, machine produced data" gathered and maintained by KLM in the course of its regular business activity, and is devoid of "representations . . . relating to past events and human actions" that are drawn from the underlying data through some combination of interpretation and analysis.  *Bullcoming,* 131 S. Ct. at 2714.  As discussed, however, the Government has offered no such testimony or evidence reflecting (i) the sorts of baggage data maintained by KLM, and (ii) the manner in which this data is collected and its reliability ensured.[11]

---

[11]It should be noted that no matter the precise contours of the Supreme Court's holding in *Williams,* the decision in that case does not call into question the Court's conclusion here that the baggage log offered by the Government is testimonial.  Even under the narrower conception of "testimonial" evidence embraced by the plurality in *Williams* — a view which, as explained

In this evidentiary vacuum, Defendant surely is entitled to question the basis for the Government's apparent assertion, made through its proposed introduction of the baggage log, that it was ***Defendant*** who checked the bag containing suspected cocaine at the gate as he boarded Delta Flight 251, as opposed to some other means through which this bag found its way onto the flight. The constitutionally guaranteed means for Defendant to raise such questions, of course, is through cross-examination of a witness who testifies from personal knowledge that Defendant checked the bag in question, but the Government has offered no such witness.[12] Because the Government instead seeks to

---

earlier, did not gain the support of a majority of Supreme Court Justices — the baggage log in this case would still qualify as testimonial because, unlike the Cellmark report under consideration in *Williams,* the baggage log (i) was produced only after Defendant was identified as the individual allegedly responsible for the bag on Delta Flight 251 in which suspected cocaine was found, (ii) was sought by the Government specifically "for the purpose of obtaining evidence to be used against" Defendant at trial, and (iii) is "inherently inculpatory," as it was prepared and is being offered for the express purpose of forging a link between Defendant and the bag containing suspected cocaine. *Williams,* 132 S. Ct. at 2228 (Alito, J.) (discussing the various characteristics of the Cellmark report that rendered it nontestimonial).

[12]Indeed, the value of this constitutional guarantee of confrontation was amply illustrated in the ensuing course of Defendant's trial. As noted earlier, the Government sought and obtained additional passenger and baggage records from KLM in response to the Court's ruling on its proposed Exhibit 26, and the Court determined that these new records were free from the Rule 803(6) and Confrontation Clause concerns triggered by proposed Exhibit 26 and thus could be offered into evidence. Notably, witnesses called by the Government and Defendant alike agreed that upon their review of these records, as well as other evidence in the record, it was clear that the bag in question was ***not,*** in fact, checked at the gate of Delta Flight 251 from Amsterdam to Detroit, but instead had been introduced into KLM's baggage handling system by someone at some point "upstream" of Amsterdam and then placed onto Flight 251. Accordingly, if the Court had allowed the Government to introduce its proposed Exhibit 26 into evidence, the jury would have been presented with a factual assertion that witnesses on both sides agree is incorrect — *i.e.,* that the bag in question was checked at the gate of Flight 251 — and yet Defendant would have had no opportunity to confront the source of this misinformation. Through the application of the Rules of Evidence and the relevant Confrontation Clause precedents, this unfortunate predicament was avoided.

19

introduce this "testimony" through the baggage log included in its proposed Exhibit 26, the Confrontation Clause bars the admission of this exhibit.

### III.  CONCLUSION

For the reasons stated in open court on March 3, 2015, as supplemented by the rulings set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's objections to the introduction of the Government's proposed Exhibit 26 are SUSTAINED, and this proposed exhibit therefore is EXCLUDED from the evidence at Defendant's trial.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  March 12, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 12, 2015, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135